## ADAM KRAFT v. EDSON BAXTER.

1. HOMESTEAD ENTRY — *Paramount Title.* B. made his homestead entry
   on land, under the act of congress approved May 20, 1862, relating
   to homesteads, but such entry was canceled in the local land office,
   and on appeal affirmed by the commissioner of public lands and
   the secretary of the interior. After such cancellation, the wife of B.
   made a contract with the railway company which claimed title to the
   land, for the purchase thereof. Such contract was assigned by B.'s
   wife to secure B.'s obligations, and also assigned by B. himself. It
   was subsequently foreclosed as a mortgage, and the interest of B.'s
   wife sold at sheriff's sale. K. claims title to the land as grantee of
   the purchaser at sheriff's sale. By an act of congress, approved after

such assignment, B. was enabled to make proof on said land under his original entry, which had been erroneously canceled, and obtained a patent therefor from the United States. *Held*, That B. had the paramount title to said land.

2. FRAUD — *Assignment* — *Estoppel, When.* Before B. can be estopped from claiming title to the land for which he holds a patent, it must be shown that he either made false representations to or concealed material facts from the assignee of his wife's contract, with the intention, actual or virtual, that such assignee should act upon his representations or concealment of material facts, and that thereby the assignee was induced to act.

### *Error from Marion District Court.*

ACTION by *Kraft* against *Baxter* to quiet the title to certain land, and to restrain the defendant from the commission of certain trespasses thereon. Judgment for defendant, at the February Term, 1885. The plaintiff brings the case to this court. The opinion fully states the facts.

*Geo. R. Peck, A. A. Hurd, Frank Doster,* and *Robert Dunlap,* for plaintiff in error.

*L. F. Keller,* and *Scott & Frith,* for defendant in error.

Opinion by HOLT, C.: Plaintiff in error brought his action against defendant to quiet title to the east half of the southeast quarter, section 27, township 19, and range 3 east, in Marion county, Kansas. The case was tried by the court without a jury, and it found the facts substantially as hereinafter set forth. R. A. Catlin made a homestead entry upon said land upon the 20th day of March, 1863. At that time it was a part of the public domain of the United States. This entry was canceled for abandonment, on the 18th day of December, 1871. On the 23d day of the same month, the defendant, having the requisite qualifications, made a homestead entry of this land. On the 30th day of November, 1872, the defendant offered, on sufficient proof of residence and cultivation, to commute his homestead and purchase said land, but the register and receiver of the land office at Salina, Kansas, refused to allow him to do so, on the ground that the land in question

had been withdrawn from settlement as a part of the public domain before the defendant's homestead entry, and that the A. T. & S. F. Rld. Co. was entitled to said land under the provisions of the act of congress approved March 3, 1863, granting certain lands to the state of Kansas, for the benefit of designated railroad companies. On the 13th day of December, 1872, the defendant's entry was canceled. He appealed from the decision of the register and receiver to the commissioner of the general land office, who, on May 23, 1873, affirmed it. On February 9, 1874, the secretary of the interior affirmed the commissioner's decision, and the case was closed on the 13th of February, 1874, at the local land office. On January 9, 1873, the A. T. & S. F. Rld. Co. selected lands embracing this tract, and said selection was approved May 28, 1874. At that time the land was certified to the state of Kansas as indemnity land for said company, and the state issued a patent of said land to the railroad company on the 18th day of January, 1875. This land was within the limits of the withdrawal of 1863, for the benefit of the grant to certain railroads by the act of congress, approved March 3, 1863, and by the withdrawal of November 4, 1869, it fell within the indemnity limits of the grant.

On the 22d of October, 1873, Rebecca Baxter, wife of the defendant, made a written contract with the said railroad company, by which it sold the land in question to her for $——, of which the sum of $58.80 was paid in cash, and the balance was to be paid in eleven future installments, which she promised to pay. On the 15th of June, 1874, the defendant was indebted to William Kellison in the sum of $320.85, and to secure the payment of said sum, the defendant and his wife Rebecca Baxter assigned said land contract to said William Kellison, by indorsing thereon the following contract:

"I, R. A. Baxter, and E. Baxter, her husband, the within-named purchaser, for and in consideration of $287 to me in hand paid, do hereby sell, assign and transfer all my right, title, interest and claim in and to the within-described tract or parcel of land unto William Kellison, his heirs and assigns,

23 — 38 KAS.

forever. And I hereby authorize the Atchison, Topeka & Santa Fé Railroad Company to receive from him, the said William Kellison, any or all money or unpaid balance due on the within contract to said company in part consideration for said land, and upon the final payment of the purchase-money, and a full compliance with all the requirements contained within the within agreement or contract, to execute or cause to be executed to him, the said William Kellison, the deed to said land, instead of to me."

On the 10th day of August, 1874, the debt owing by defendant to Kellison still being unpaid, the defendants induced one J. M. Young to pay Kellison, and also to pay several other debts of the Baxters, and to join with him as his surety in a bond of $500, upon which Young afterward paid damages to the amount of $227; and as security to Young for these amounts, defendant caused William Kellison and his wife to assign to the said Young the railroad contract for the land in question, which was in form the same as the one quoted above, differing only in the amount of the consideration, the dates, and the names. The amount thus advanced became due, and in default of payment Young commenced an action of unlawful and forcible detainer against the defendant and his wife Rebecca, before a justice of the peace. The Baxters filed a written answer, in which they alleged that they were the owners of said land under the contract of the railroad company; that they assigned this contract to Kellison as security to him for the payment of the sum of $325.85; that they had induced Kellison and his wife to assign the same to Young as security for money which Young had advanced them and as security for Young's signing the bond in their interest, and that this whole transaction was intended by Young and the Baxters as a mortgage upon this land. This answer was sworn to. On this showing the case was certified to the district court of Marion county, and upon trial, judgment was rendered for the defendants.

On the 1st of July, 1875, Young brought his action in the district court to foreclose the assignment of the said contract as a mortgage, and in due time obtained a judgment, and

bought in the land at sheriff's sale, subject to the contract with the railroad company. During all these proceedings no claim was set up by Baxter of any right to the land by virtue of his homestead entry. After the purchase of said land by Young, all of the deferred payments were made to the railroad company, and he received a warranty deed to the land in question.

On the first of January, 1880, J. M. Young sold this tract of land to one H. E. Yingst, who sold it to Adam Kraft, plaintiff in this suit, on the 31st day of December, 1881, and executed to him a warranty deed. He told Kraft, before the purchase of the land, that the defendant threatened to assert some claim to the land under a homestead entry, but said he thought the claim of plaintiff was of no consequence. In the fall of 1883, Kraft planted about twenty acres of winter wheat on this land, and in the spring of 1884 was preparing to cultivate an additional part of it. On the 10th day of November, 1883, the defendant made application at the United States land office at Salina to have his homestead entry reinstated, under the act of congress of April 21, 1876; which application was refused. Thereupon he appealed to the commissioner of the general land office at Washington, and on the 19th day of February, 1884, the decision of the land office at Salina was reversed, and the defendant's homestead entry ordered to be held for reinstatement, subject to an appeal to the secretary of the interior. The appeal was not prosecuted, and on the 30th of April, 1884, the defendant's homestead entry upon the land was reinstated. On the 12th day of May, 1884, the defendant commuted his homestead entry by making proof of residence and cultivation, and paying to the receiver of the land office at Salina the government price of the land, and obtained from the said receiver his final receipt. Upon these findings the court rendered judgment for the defendant. Motions for a judgment upon findings, and for a new trial, were overruled. The plaintiff has brought the case to this court.

There is no objection made to the findings on the ground that they are not supported by evidence; the contention is that

they are not sufficient to support the judgment rendered by the court. It is clear that the defendant has the paramount title to this land, and ought to obtain a judgment in his favor, unless he is estopped. The plaintiff claims that the defendant is estopped from setting up his title to this land against him, for the reason that defendant's wife entered into a contract with the railroad company for the land, and afterward he joined with her in assigning such contract for the payment of his debts, and in all the litigation which arose from such assignment he failed in any way to mention his own interest in this land under the homestead entry; and claims that he should not be heard to dispute the title of the man who derived his estate from the instrument he and his wife executed. It is not contended that Baxter's homestead entry passed by the contract, but it is claimed that he cannot now assert that he had any such right or claim, and therefore cannot set up the title he derived thereby. The assignment purports to convey the interest that Rebecca Baxter had under her contract with the railroad company. There is no pretense that they conveyed any other or different one, and when Young obtained his judgment and sheriff's deed, he obtained only the rights and interest the Baxters may have had under the contract.

But referring to the question of estoppel, what elements must exist to constitute an equitable one? Bigelow lays down the rule as follows:

"1. There must have been a false representation or a concealment of material facts.

"2. The representation must have been made with knowledge, actual or virtual, of the facts.

"3. The party to whom it was made must have been ignorant, actually and permissibly, of the truth of the matter.

"4. It must have been made with the intention, actual or virtual, that the other party should act upon it.

"5. The other party must have been induced to act upon it."

There was absolutely nothing showing that he made a false representation. Was there a concealment of material facts? What was there to conceal? In 1871 the defendant had made his homestead entry at the Salina office; it had been canceled

by the local officers there, and their action had been approved
both by the commissioner of public lands and the secretary
of the interior.    Did he keep silent when he should have dis-
closed his interest in this land under his homestead entry?
If he kept back the facts, did he intend actually and virtually
that Young might act upon his silence?    We do not know
from the evidence or findings that Young did not know all
about defendant's efforts to obtain the land under his home-
stead entry.    The findings are silent upon this point.    If
plaintiff claims by estoppel, should he not show affirmatively
that Young did not know of defendant's homestead entry?
We think that this whole question of estoppel has reference
only to the time of borrowing the money; even what was
said by defendants afterward, has but little place here.    It
was found by the court that the assignment was intended as
a mortgage, and the answer of the Baxters referred only to
what was done at the time of the assignment to Young, and
it having been established by the court that such instrument
was in fact a mortgage, it is not to be presumed that the action
for foreclosure, sale and execution of a sheriff's deed was
induced by the answer of the Baxters, but solely because
Young held a mortgage upon the interest that Mrs. Baxter
had in the land, and wished to foreclose it.    Could Baxter
conceal the fact that he had an interest in the land, when he
did not know it himself, and all the officers had decided that
he had none?    But it is claimed that the facts ought to have
been disclosed; if they had been, what possible effect would it
have had?    His homestead entry was only brought to life by
an act of congress of April 21, 1876, which was not then con-
templated, at least by either Baxter or Young.    At this time
Baxter had no hopes that his homestead entry would ever be
reinstated; he believed unquestionably that all the estate they
possessed was derived from the contract of his wife with the
railroad company.    We think the defendant did not conceal
material facts concerning his interest in this land, with the in-
tention of inducing Young to advance him money.

The plaintiff obtained this land under the act of congress of May 20, 1862, which provides:

"That no lands acquired under the provisions of this act shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor."

The plaintiff says that is a strong reason why the defendant should not be allowed to say that he had a homestead entry, for had Young known it he would not have taken as his security a worthless title. This argument is not as sound as it at first appears. It would permit this land to be taken for his debts by an estoppel, when it could not be done by the positive contract of the defendant, or even by any direct proceeding. The statute provides that in no event shall the land be liable for any debts contracted prior to the issuing of the patent. We have searched in vain for an exception to this comprehensive language, which would apply to the facts in this action. We do not feel at liberty to make one. The plaintiff had no legal title to the land when his wife made the assignment of the contract with the railroad company. Under his homestead entry he had an inchoate right—an equity in the land—which might ripen into a title by the performance of certain acts. This inchoate interest was given life by an act of congress, subsequent to the making of such assignment; and then it was necessary for defendant, in order to acquire a title to the land, to state under oath that the land was taken and proved up for his own benefit. When the defendant made application for this land, he was required to make oath that his entry was made for his exclusive use, and not either directly or indirectly for the benefit of any other person. He could not have made a contract that would have vested any right in this land, contrary to the law of congress relating to homesteads. We believe he could not preclude himself from taking advantage of what is contrary to public policy. If he could, the doctrine of estoppel could be used for the purpose of defeating the plain provisions of the law.

Therefore we recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.